Duckett, J.,
delivered his opinion to the following effect.
He should not make many observations, in addition to what he had remarked on granting the District Attorney’s motion for a warrant to arrest the prisoners on the charge of treason. Nor should he make any professions of scrupulous attachment to the right of personal liberty in the citizens of our country; becau'se, if the whole tenor of his conduct through life had not evinced such attachment, he felt assured that no professions on his part could, on this point, secure the confidence of the public. He concurred in the sentiment, that no reasons of state, no political motive, should be suffered to influence, in the slightest degree, the decision of the present question; but while, on the one hand, a due regard should be paid to the right of personal liberty in the citizen, we should not be entirely forgetful of the duty we owe to the public, of preserving the Constitution and government of the country. That on the question then before the Court, he would observe, as he had done when the warrant issued, that he would at that time give no opinion as to what constituted a levying of war within the definition of treason in the Constitution of the United States. That it appeared to him unnecessary, if not improper to do so, as he might be called upon to decide the law, in reference to the facts that might appear on the trial of the prisoners. That the only question then to be decided was, whether there was probable cause, supported by oath or affirmation, as required by the 6th article of the amendments to the Constitution, to induce a belief that the prisoners were guilty of the crime for which they had been arrested. This question, he said, had been deliberately considered by the Court, before the warrant issued, and he thought every thing in this inceptive state of the business, was regularly an ex parte proceeding; he, therefore, had been against permitting counsel to argue on any question, except whether the offence was bailable, and whether, under the circumstances, the Court, in their discretion, ought to bail. They had, however, been allowed to argue, in effect, to the utmost latitude, against the propriety of having issued the warrant. To this argument he had given the strictest attention, and could observe with Mr. Fitzhugff, that it would have been well addressed to the jury, if the prisoners had been upon their trial. It had, however, produced no altera *382 tion in his opinion, as he still thought there was probable cause appearing to the Court to authorize the commitment of the prisoners for trial.
To determine this question, he .said let us take a short .view of the evidence. The depositions of General Wilkinson prove, unquestionably, the connection of the prisoners with Colonel Burr, in carrying into effect one common intent or plan, and their knowledge of this view. They indeed show, from the acts of the prisoners and their own confessions, their immediate agency in the furtherance of this scheme. If, then, it can be shown that Mr. Burr has probably committed treason, their agency and connection with him, while possessing this knowledge of his treasonable views, create the same probability against them, as in the same treason all in this stage of the business must be considered principals.
What, then, was the intention, the quo animo, with which Mr. Burr’s expedition was undertaken ? This, by General' Eaton’s deposition, is proved to be the separation of the Western from the Atlantic States,- and the establishment of a monarchy there, of which Mr. B. was to be the sovereign. It is probable he had another object also in view, the invasion of Mexico ; but this does not appear to be distinct from his treasonable plan of dismembering the union. This treasonable intention is also stated in the confessions made to General Wilkinson, by one of the prisoners. In the pursuit, then, of this object, we find that Mr. B. had actually commenced the expedition, and that he expected to be at Natchez with an armed force at a certain period. It appears, too, from the confessions of the prisoners themselves, that Mr. B. was levying a large body of armed men; and, what may go far to prove their knowledge of, and agency in that business is, that the officer who was to command the first five hundred men, is stated by name. One of the prisoners, also, says that he had written to Colonel Burr for provisions. Should these circumstances, of themselves, not amount to overt acts of levying war, upon which question the judge said he should at that time say nothing, yet when taken in connection' with the situation of the country, the state of alarm existing among the people, and the active preparations of defence against an expected attack, they furnished strong primd facie evidence that they had been followed up by the commission of other acts on the part of Mr. Burr and the prisoners, that would amount to a levying of war within the strictest definition of the terms. Nor is there any thing in the testimony that can positively exclude the inference of an active cooperation on the part'of the prisoners in the different measures that are probably imputable to Mr, Burr.
*383 The judge then remarked, that an observation made by himself, on issuing the warrant, seemed not to have been correctly understood by the prisoner’s counsel. He had not said, that in the present case, it was necessary to resort to public documents to aid the depositions in furnishing probable cause for the arrest; but he would now observe, as he had then done, that although the depositions did, to his mind, establish a probable cause, on which he could act, yet that this probability was strongly corroborated by the message of the President, and other public documents on the subject. That even admitting that the 6th article of the amendments to the Constitution, which provides against general warrants, may require an oath or affirmation, before any warrant can issue, yet he could not subscribe to the doctrine, that the circumstances showing the probable cause, must, in all cases, be contained in the oath or affirmation itself.
If this principle be once considered correct, it would, indeed, when taken in connection with the necessity contended for in the present case, of proving, on a question of commitment, the positive existence of the offence charged, be the worst precedent, as it- regarded the public safety, that could possibly be established, though at the same time it might be the most convenient cloak for treason that could be invented. Under this doctrine, even an authenticated record, showing .the conviction of Mr. Burr of treason, could it be produced, on the present question would be deemed inadmissible in corroboration of the probable cause contained in the affidavits.
The judge concluded, by observing, that he was opposed to bailing the prisoners ; for although the evidence might also have charged them with a misdemeanor, in setting on foot an expedition against a nation at amity with'-the United States, yet as they had been arrested on a charge of the highest offence against their country, nothing but their persons could be considered an adequate security to the public.
Fitzhugh, J.,
delivered the following opinion.
My extreme indisposition has prevented me from preparing any remarks in support of the opinion which I am called on to give; but since it has been thought proper, by the members of the court, to assign our reasons for the course which has been pursued, I shall express those sentiments which at present occur to me. This question has been argued, as if it were now before a jury who were called on to convict or acquit the prisoners, without recollecting that we are at that stage where, in the language of the Constitution* probable cause, supported by oath or affirmation, is sufficient. This remark is necessary to show that many of the conclusions of counsel are incorrect. In this incipient state the evidence is *384 always ex parte, and such as would be inadmissible at the final trial. A warrant goes forth to apprehend and afterwards to commit, on the suggestion of an individual, supported by oath, that a crime has been committed. The affidavit is made in the absence of the supposed offender, and no more certainty is required than probable cause. By a law of the United States, [1 Stat. at Large, 112] there must be the confession in open court, or the testimony of two witnesses to the same overt act, to convict one of treason. "Whereas, probable cause, supported by oath or affirmation, will authorize issuing a warrant. In no case, whether criminal or civil, is an affidavit evidence at the trial, because taken in the absence of the party against whom it is intended to operate ; and yet it has always been considered as sufficient to justify issuing a warrant to arrest. These inquiries obviously occur: 1st, Is there probable cause to believe, that any treason has been committed against the United States, and this supported by oath, &e. ? 2d. Are the prisoners implicated in the treason ?■ And 3d, How, whether as principals, or as only guilty of misprision of treason ? That there is probable cause to believe that treason has been committed by Colonel Burr, the public rumor and universal alarm, which seems to have convulsed our country from the extremity to the centre, the President’s communications to Congress and to the Court, afford at least ground of suspicion, and this is supported by the positive oaths of General Eaton, General Wilkinson, Mr. Donaldson, Mr. Meade, and Mr. Wilson, all going to show the origin, existence and progress of Burr’s treasonable projects and acts. But here the counsel for the prisoners have insisted that none of this mass of evidence criminates Burr, and have contended that the President’s communications are inadmissible. It is not generally by detached parts of evidence, but by a well-connected chain of circumstances, that we arrive at proof; nor can a crime be made out, by the proof of any solitary fact. In a charge of murder, it would not be sufficient to show, that a blow was given from which death ensued; but it is necessary to prove and disclose a particular state of mind. There must be deliberate resentment or ill-will; there must be malice prepense. So in treason, (the case now under consideration,) no degree of violence, however atrocious, no enlisting or marching men, no injury, if limited in its object to personal rivalship, or even extensive enough in point of locality to contemplate or threaten the opposition and destruction of the laws or government of any one of the United States, will amount to treason against the United States. It is the intention, alone, which fixes the grade of the offence. This intention is only to be collected from circumstances; and though the communications of the *385 President do not, of themselves, furnish full evidence of Burr’s treason against the United States, yet they must be considered entitled to some weight in leading to the conclusion, that there is probable cause; but when, in addition to this, it is considered that the most solemn obligation is imposed by the Constitution on the President, to make communications of this nature to Congress, and that he has, also, in further discharge of his constitutional duties, ordered out the militia, which on ordinary and trivial occasions, he is not justifiable in doing, a person must be strangely incredulous who will not admit that there is probable cause of suspicion, that a dangerous insurrection or treason exists in our country. A report thus sanctioned by duty and oath, if made to this court, by one of its officers, would be respected, and why shall not a communication from the first executive officer of the union be credited, when he announces to the nation, information in the line of his duty ? But this general ground of alarm is rendered more specific by the affidavits which have been exhibited to us. If the persons who have been sworn on this occasion are to be believed, (and no one has yet questioned their credibility,) they prove a scheme laid by Burr to usurp the government of the United States; to sever the "Western States from the Union; to establish an empire west of the Alleghany Mountains, of which he, Burr, was to be the sovereign, and New Orleans the emporium, and to invade and revolutionize Mexico. That in prosecution of those projects, he wrote a letter to General Wilkinson, the commander-in-chief of the American army, with the avowed object and design of alienating him from his duty, and inviting him to embark in the undertaking, and holding out to him the most flattering and sanguine assurances and prospects of success. Plorrid as this attempt was, yet if the information had reached no further, I should have no hesitation in saying, that it would have been nothing more than a conspiracy to commit treason, or some other offence. But when Burr assures Wilkinson that he had obtained funds, and actually commenced the enterprise; that detachments from various points, and under different pretences, would rendezvous on the Ohio the 1st of November, with the first five hundred or one thousand men in light boats, now constructing for that purpose ; — when, in addition to this, Wilson and Meade swear that when they left New Orleans, the one the 15th, the other the 19th December, the strongest apprehension and belief universally prevailed among the inhabitants that- Burr and his confederates had prepared an armed force, and were marching to attack and plunder the city; and that they .knew that Wilkinson was decidedly of opinion, from the most satisfactory information, that Burr was advancing, and, under that belief, he *386 was putting the place in a posture of defence. "When this coincidence of circumstances, and this strength of testimony appear, there can be little doubt of the existence and the extent of Burr’s views, and of his having embodied and enlisted men, with views hostile to the government of his country, and that he had done acts which amount to levying war on the United States.
Burr’s treason, then, being established, we are to inquire whether the prisoners were his confederates. They are represented, under oath, to have been bearers of the duplicates of Burr’s letters, in cipher, to Wilkinson, and to possess Burr’s confidence; they use arguments in addition to those in the letter, to invite "Wilkinson to accede to their views; admit that they have corresponded with Burr on the subject, since their delivery of the letter; that Swartwout informed Wilkinson that Burr, with a powerful association, extending from New York to New Orleans, was levying an armed body of seven thousand men from New York, and the Western States and Territories, with a view to carry an expedition against the Mexican provinces, and that five hundred men, under Colonel Swartwout and Major Tyler, were to descend the Alleghany, for whose accommodation light boats had been built and were ready ; said that New Orleans would be revolutionized, when the people were ready to join them, and that there would be some seizing.
Here, then, is evidence of a connection with Colonel Burr of a treasonable nature. What is it ? The Act of Congress defines misprision of treason to be, a neglect to disclose the knowledge of a treason. But the prisoners have not only known of the treason, but carried a treasonable letter, knowing its contents; endeavored to further Burr’s views and wishes, and to seduce Wilkinson from his duty. The offence exceeds misprision of treason, and as there is no intermediate class of offences of a treasonable nature between misprision and treason, it must be treason.
It has been observed, by the counsel for the prisoners, that no judge could commit on an affidavit made before any other judge. This distinction is certainly new, and I believe unprecedented. In all general warrants for arresting a supposed offender, the direction to the officer is, to bring the party before the person issuing the warrant, or some other justice of peace, &e., which would be, at least, nugatory, if no person could inspect or regard the affidavit, except the person before whom it was made. Therefore, I conclude, that Wilkinson’s affidavits, made before justices of the peace of New Orleans, whose commissions appear to be properly authenticated by the Secretary of State, are evidence at this stage of our inquiry.
*387 I am, therefore, of opinion, that the prisoners should be committed for treason against the United States, in levying war against them.[1]

 The order for the commitment of the prisoners was in these words : “ The prisoners, Erick Bollman, and Samuel Swartwout, were brought up to court, in custody of the marshal, arrested on a charge of treason against the United States, on the oaths of General James Wilkinson, General William Eaton, James L. Donaldson, Lieutenant William Wilson, and Ensign W. C. Meade, and the Court went into further examination of the charge. Whereupon it is ordered, that the said Erick Bollman and Samuel Swartwout be committed to the prison of this court, to take their trial for treason against the United States, by levying war against them, to be there kept in safe custody, until they shall be discharged in due course of law.”
The bench-warrant for arresting the prisoners, was in these words: ’

District of Columbia, to wit:

The United States of America, to the Marshal of the District of Columbia, greeting:—
[l. s.] Whereas there is probable cause, supported by the oath of James Wilkinson, William Eaton, James Lowrie Donaldson, William C. Meade, and William Wilson, to believe that Erick Bollman, commonly called Doctor Erick Bollman, late of the city of Philadelphia, in the State of Pennsylvania, gentleman, and Samuel Swart-wout, late of the city of New York, in the State of New York, gentleman, are guilty of the crime of treason against the United States of America: —
These are, therefore, in the name of the said United States, to command you that you take the bodies of the said Erick Bollman and Samuel- Swartwout, if they shall be found in the county of Washington, in your said District, and them safely keep, so that you shall have their bodies before the Circuit Court of the District of Columbia, for the county of Washington, now sitting at the capítol, in the City of Washington, immediately to answer unto the United States of America, of and concerning the charge aforesaid. Hereof, fail not at your peril, and have you then and there this writ. Witness the Honorable William Crunch, Esq., Chief Judge of the said Court, this 27th day of January, 1807. William Bkent, Clerk.
Issued 27th day of January, 1807.
Upon habeas corpus issued by the Supreme Court of the United States, at Eebruary term, 1807, the prisoners were discharged. 4 Cranch, 75.